**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |
|---|---|
| MICHAEL AND TAMERA HRYCAY, | : |
| : | CIVIL ACTION |
| Plaintiffs, | : |
| : | |
| v. | : No. 07-2605 |
| : | |
| MONACO COACH CORP., | : |
| : | |
| Defendant. | : |

_____:

**<u>MEMORANDUM</u>**

**ROBERT F. KELLY, Sr. J.**                                          **OCTOBER 10, 2008**

Presently before this Court are the Renewed Motion for Judgment as a Matter of Law and the Alternative Motions for a New Trial or Amended Judgment filed by the Defendant, Monaco Coach Corporation ("Monaco"). For the reasons set forth below, the Motion for Amended Judgment will be granted and all other motions will be denied.

**I.       BACKGROUND**

Plaintiffs Michael and Tamera Hrycay ("the Hrycays") purchased a Monaco Windsor motorhome from Stoltzfus Trailer Sales, Inc., a dealer authorized to sell Monaco products in West Chester, Pennsylvania. The Hrycays assert that they purchased the motorhome on July 7, 2005, but due to the fact that the motorhome required several initial repairs, they did not take possession of it until July 15, 2005. Since taking possession of the motorhome, the Hrycays have experienced several recurring problems with the vehicle and have sent it back to Stoltzfus on several occasions for repairs. All of the repairs have been unsuccessful. After

several attempts to repair the vehicle at Stoltzfus, Monaco requested that the Hrycays deliver the

vehicle to its Indiana manufacturing facility, so that Monaco could complete the work itself.  The

Hrycays sent the motorhome to the Indiana repair facility on September 18, 2006, where it

remained until November 16, 2006.  The Hrycays allege that employees of Monaco assured them

that Monaco would resolve any remaining issues at the Indiana facility.  However, the Hrycays

continue to experience many of the same problems with the motorhome as they were

experiencing prior to the repairs made in Indiana.

            In connection with the purchase of the motorhome, Monaco issued the Hrycays a

Monaco Motorhome Limited Warranty ("Limited Warranty").  The applicable portions of the

Limited Warranty read as follows:

>            [t]he Limited Warranty provided by Monaco ("Warrantor") covers
>            your new motorhome . . . for twelve (12) months from the original
>            retail purchase date or the first 24,000 miles of use, whichever
>            occurs first.  However, the Limited Warranty provided by
>            Warrantor covers the steel or aluminum frame structure of the
>            sidewalls (excluding slide-outs), roof, and rear and front walls for
>            sixty (60) months from the original retail purchase date or the first
>            50,000 miles of use, whichever comes first.
>
>                    . . . .
>
>            These warranties are not intended to "extend to future
>            performance."  Any action to enforce these express or any implied
>            warranties shall not be commenced more than ninety (90) days
>            after the expiration of the one year warranty coverage period
>            designated above.

(Def.'s Mot. for Summ. J., Ex. A.)  The Hrycays contend that they did not receive a copy of this

Limited Warranty until they went to pick up the vehicle from the dealership on July 15, 2005,

eight days after they purchased the motorhome.  Monaco asserts that the actual date of purchase was July 15, 2005, but does not dispute the fact that Plaintiffs were not presented with a copy of this Limited Warranty on either July 7 or July 8, 2005.

On May 11, 2007, the Hrycays filed a Complaint in the Philadelphia Court of Common Pleas, alleging three claims.  Count I stated a claim under the Magnuson-Moss Warranty Improvement Act ("Magnuson-Moss Act"), 15 U.S.C. § 2301.  Count II stated a claim for breach of express warranty and of the implied warranties of merchantability and fitness for a particular purpose pursuant to the Pennsylvania Uniform Commercial Code ("PUCC").  Count III stated a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1.

On June 13, 2008, Defendants filed a Motion in Limine regarding "conditions not covered by Monaco Coach's Warranty, conditions repaired and conditions not found to be defective by Plaintiffs' expert" and requested that this Court limit Plaintiffs' testimony solely to "the alleged problems with the fiberglass sidewalls and alleged problems with the air suspension system claimed to result in leaning of the motorhome."  (Def.'s Mot. in Limine ¶ 11.)  This Court denied Defendant's motion and permitted Plaintiffs to present evidence regarding all the repair orders for the motorhome.

The trial of this matter commenced on June 16, 2008 and concluded on June 18, 2008.  At trial, Plaintiffs introduced purchase documents, dated July 7, 2005 and July 8, 2005.  Taken as a whole, these documents contain (1) the signatures of both the Hrycays and Stoltzfus; (2) a description of the product, including make, model, year and serial number; (3) a description of the trade-in vehicle, including make, model, year and serial number; (4) detailed price

3

quotations for the product (listing "Base Price of Unit" as $311,662.00) and the trade-in (listing "Trade-In Allowance" as $81,870.00); (5) buyers' information, including address, phone numbers, dates of birth, driver's license numbers and Michael Hrycay's Social Security number; (6) insurance information, including policy number and representative's contact information; and (7) notes regarding options and defects.[1]   The bottom of the front page of the July 7 and July 8 documents states:  "Buyer is purchasing the above described unit . . . ."  (Pl.'s Ex. 1.)  The language at the very bottom of the front page of both documents states:  "A PLAIN LANGUAGE PURCHASE AGREEMENT."  On the reverse side of the documents, the terms and conditions state:  "If Buyer does not complete this purchase as a cash transaction, Buyer knows before or at the time of delivery of the unit purchased, Buyer will enter into a retail installment contract and sign a security agreement . . . ."  Several Stoltzfus repair invoices identify the "purchase date" as being July 7, 2005.  (Pls.' Ex. 7 and 8.)  Other Stoltzfus repair invoices introduced into evidence identify July 7, 2005 as being the "warranty date" and list the "purchase date" as being July 15, 2005.  Based on the preceding facts, this Court stated:  "I don't think there is a dispute, really, as to what took place on July 7 as far as the signing or the effect of that.  So, I am making the ruling that this purchase agreement was entered into on July 7th, 2005, now we go from there.  So, the

---

[1] The July 7 agreement was modified and superceded by the July 8 agreement which was signed by both Michael Hrycay and Stoltzfus.  The July 8 agreement is identical to the July 7 agreement with the following exceptions:  (1) the July 8 document contains the word "rewrite" in its top left corner; (2) the July 8 document does not contain the signature of Tamera Hrycay; (3) the July 8 document lists four defects in the motorhome that were not listed on the July 7 document ("leak over TV dash," "trim uneven," "scratch door panel" and "bathroom door will not open"); (4) the July 8 document contains a proposed delivery date of July 15, 2005, whereas no delivery date is stated on the July 7 document; (5) the July 8 document states Michael Hrycay's Social Security number, whereas his Social Security number does not appear on the July 7 document; and (6) four different amounts – "Cash Purchase Price," "Sales Tax," "Unpaid Balance of Cash Sale Price" and the difference between "Base Price of Unit" and "Trade-In Allowance" – are lower on the July 8 document than the amounts listed on the July 7 document because the July 8 figures were calculated without including the amount of $7108.00 in "Optional Equipment" that appeared on the July 7 document.

4

limitation period is not going to be a factor." (Tr. 3.16.)

At trial, Mr. Hrycay stated that he paid $311,672 – the manufacturer's suggested retail price – for the motorhome.  (Tr. 2.104.)  On direct examination, Plaintiffs' expert witness, Wayne Degen, testified as follows:

> MR. POWER:  Sir, based upon your review of the repair history of this vehicle and your inspection of the vehicle, were you able to draw any conclusion as to the value of the vehicle on the day it was sold to the Plaintiffs?
> MR. DEGEN:  Based on my inspection and review of the documents, and the history of the vehicle in its in-service use time, I believe I based my percentage on forty percent diminished value.
> MR. POWER:  And that would be measured as of what time, sir?
> MR. DEGEN:  As of the day of purchase.
> MR. POWER:  So, the vehicle would be worth forty percent less than what the Plaintiffs purchased it for on the day they bought it?
> MR. DEGEN:  Yes.

(Tr. 3.135-36.)  On cross examination, Mr. Degen's testimony was as follows:

> MR. WILLIOTT:  When you wrote in your expert report and when you testified today, forty percent of the purchase price, you meant the 311,662 that was in the papers that you had?
> MR. DEGEN:  I based it on the retail purchase price that I had available at the time, yes.

(Tr. 3.150.)  The amount of $311,662, however, failed to reflect the inflated trade-in allowance Plaintiffs received when they purchased the motorhome.  The relevant portions of the cross-examination of Mr. Hrycay are as follows:

> MR. WILLIOTT:  You just testified about the trade value that Stoltzfus gave you on your 1999 Damon Intruder motorhome, correct?
> MR. HRYCAY:  Correct.
> MR. WILLIOTT:  And you testified that they gave you $81,870 in trade value on that motorhome?
> MR. HRYCAY:  Yes.
>
>            . . . .

MR. WILLIOTT:  Now, you bought that Damon Intruder motorhome in late 2002 when it was already over three years old, correct?

MR. HRYCAY:  Yes.

MR. WILLIOTT:  And it had roughly, 44,000 or 45,000 miles on it at that time?

MR. HRYCAY:  Yes.

. . . .

MR. WILLIOTT:  And when you bought it, you paid actually, $36,000 for the Intruder, correct?

MR. HRYCAY:  Correct.

. . . .

MR. WILLIOTT:  And then you put another, roughly, 30,000 miles on the Intruder between late 2002 and July of 2005, correct?

MR. HRYCAY:  Yes.

MR. WILLIOTT:  And you got $45,000 more in trade value than what you paid?

MR. HRYCAY:  Yes.

MR. WILLIOTT:  You'd agree, Mr. Hrycay, that your Intruder was not worth $81,870 in July of 2005?

MR. HRYCAY:  To some people it might be.

MR. WILLIOTT:  Okay.  You paid list price for your Windsor motorhome?

MR. HRYCAY:  Yes.

MR. WILLIOTT:  Sticker price?

MR. HRYCAY:  Correct.

MR. WILLIOTT:  You'll agree with me, sir, that rather than giving you a discount of roughly $50,000 off of the sticker price on your new Windsor motorhome, Stoltzfus artificially inflated the trade value on your Intruder by about $50,000, correct?

MR. HRYCAY:  I don't know how they take off the sticker price.

MR. WILLIOTT:  You do agree with me that Stoltzfus gave you more – much more – in trade value on your Damon Intruder motorhome than it was worth?

MR. HRYCAY:  No, I can't agree with you.

(Tr. 2.59-61.)  Mr. Degen, however, admitted that Plaintiffs received a greater trade-in allowance than what the trade-in vehicle was worth.  The trial transcript reads as follows:

MR. WILLIOTT:  Do you agree with me, that as of July of 2005, a 1999 Damon Intruder with over 72,000 on it, that had been purchased for $36,000 in 2002, was not worth $81,870?

MR. DEGEN:  As an actual cash value, I would agree to that, yes.

MR. WILLIOTT:  And, again, this gets back to what we were talking about earlier, there is a difference between trade value and actual retail value or market value, correct?

MR. DEGEN:  Correct.

MR. WILLIOTT:  And it's customary in the RV industry to sometimes, rather than giving the customer a deep discount on the purchase price of the motor home to instead give an artificial increase in the trade value of the trade-in motor home, correct?

MR. DEGEN:  Yes, that's –

MR. WILLIOTT:  And that's known as a trade over-allowance in the business, isn't it?

MR. DEGEN:  Yes, it is.

MR. WILLIOTT:  It's another way of giving a customer a discount, correct?

MR. DEGEN:  Correct.

(Tr. 3.147-48.)

Following Mr. Degen's testimony, Defendant moved to strike the entire testimony of Mr. Degen arguing (1) that the measure of damages was a "current valuation" which did not conform to methodology set forth in 13 Pa.C.S. § 2714 (2008), and (2) that Mr. Degen's "opinion of a forty percent diminution in value . . . was arrived at through no reliable methodology whatsoever."  (Tr. 3.156-57.)  This Court denied Defendant's motion.  (Tr. 3.160.)

At one point during the testimony of Plaintiff Tamera Hrycay, Mrs. Hrycay referred to the motorhome as a "lemon."  (Tr. 3.110.)  Defendant asked for a mistrial at sidebar, arguing that Mrs. Hrycay's use of the word "lemon" was "highly prejudicial."  (Tr. 3.111.)  This Court denied Defendant's request for a mistrial.  (Tr. 3.166.)

Finally, Defendant argued that the appropriate measure of damages is the cost of repair and produced an expert witness, Thomas Fribley, who testified that the cost of repair is

$14,550.00. (Tr. 3.194.)

The jury returned a verdict in favor of the Plaintiffs regarding the Hrycays' claims that survived trial.  (See Verdict Form.)  Specifically, the jury found (1) that Monaco breached its Limited Warranty; (2) that Monaco breached the implied warranty of merchantability; (3) that the Hrycays suffered damages as a result of Monaco's breach; and (4) that the amount of damages caused to the Hrycays as a result of Monaco's breach was $105,000.00.  (Tr. 3.41-42.)  On September 3, 2008, Monaco filed post-trial motions, including this Renewed Motion for Judgment as a Matter of Law and Alternative Motions for a New Trial or Amended Judgment. (See Def.'s Post-Trial Mots.)

## II.    LEGAL STANDARDS

### A.    Renewed Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(b), a party may renew its motion for judgment as a matter of law after the jury's verdict.  Fed. R. Civ. P. 50(b).  Rule 50(b) provides, in relevant part, that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Id.  "[T]he movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Id.  In ruling on a renewed motion when a verdict was returned by the jury, a court may (1) allow the judgment to stand; (2) order a new trial; or (3) direct entry of judgment as a matter of law.  Id.

A judgment as a matter of law may only be granted if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving

party.  Fed. R. Civ. P. 50(a).  Such a motion will be granted only if, after viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). The court may not weigh the evidence, determine the credibility of witnesses or substitute its version of the facts for the jury's version.  Id.  "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability."  Id.  The question for the court is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which the jury could properly find a verdict for that party.  Id.

B.   **Motion for a New Trial**

Federal Rule of Civil Procedure 59(a) governs a motion for a new trial. According to Rule 59(a), a court may, after a jury trial, grant a new trial "for any reason which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "A new trial may be granted where 'the verdict is contrary to the great weight of the evidence.'"  Wilson v. Phila. Det. Ctr., 986 F. Supp. 282, 287 (E.D. Pa. 1997) (quoting Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988)).  Also, "[a] new trial . . . is appropriate if the trial court erred on a matter of law."  Id.  (citing Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993)).  Other grounds for a new trial motion include the following: "the verdict is too large or too small; that there is newly discovered evidence; that conduct of counsel or the court has tainted the verdict; or that there has been misconduct affecting the jury."  Kiss v. K-mart Corp., No. 97-7090, 2001 WL 568974, *1 (E.D. Pa. May 22, 2001) (citation omitted).

9

The standard that a district court applies when ruling on a motion for a new trial differs with the grounds asserted in support of the motion. Id. (citation omitted).  When the asserted basis for a new trial is trial error, "[i]t is well-settled that . . . the Court 'must first determine whether an error was made in the course of trial and then must determine whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'" Corrigan v. Methodist Hosp., 234 F. Supp. 2d 494, 502 (E.D. Pa. 2002) (quoting Montgomery County v. Microvote, 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001)).  "Absent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict." Corrigan, 234 F. Supp. 2d at 498 (citing Microvote, 152 F. Supp. 2d at 794-95).  Where the asserted ground for a new trial is that the verdict is against the weight of the evidence, the district court's discretion is much narrower, and a new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991); see also Klein, 992 F.2d at 1290.  Although different standards may apply, "[t]he decision to grant or deny a motion for a new trial 'is confided almost entirely to the discretion of the district court.'" Wilson, 986 F. Supp. at 287 (quoting Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992)).

C.    **Motion for Remittitur**

In general, remittitur is only granted if the verdict awarded is "so grossly excessive as to shock the judicial conscience." Johnston v. Sch. Dist. of Phila., No. 04-4948, 2006 WL 999966, *6 (E.D. Pa. Apr. 12, 2006) (quoting Keenan v. City of Phila., 983 F.2d 459,

10

469 (3d Cir. 1992)).  If a trial judge, in his or her discretion, finds that the jury's decision is clearly unsupported and/or excessive in light of the evidence, and where no clear judicial error or pernicious influence can be identified, the judge shall order the plaintiff to remit a portion of the verdict in excess of the maximum amount supportable by the evidence or, if the plaintiff refuses remittitur, the judge shall submit the issue of damages to a new trial.  Parkway Garage, Inc. v. City of Phila., No. 90-7752, 1994 WL 412430, *6 (E.D. Pa. Aug. 3, 1994).  This Court has broad discretion in deciding whether to grant remittitur because a district court is in the best position to evaluate the evidence presented and to determine whether or not the jury has come to a rationally based conclusion.  Id.; Spence v. Bd. of Educ., 806 F.2d 1198, 1201 (3d Cir. 1986); Johnston, 2006 WL 999966 at *6.

## III.   DISCUSSION

### A.   Monaco's Arguments for Judgment as a Matter of Law

1.   Determination of the Purchase Date and Expiration of the Statute of Limitations

Monaco alleges that the purchase date of the motorhome was July 15, 2005, the date which the Hrycays "paid for the vehicle, bound themselves to financing, registered the vehicle with the state and took possession of the vehicle."  (Def.'s Br. Supp. Mot. JMOL 7.)  Alternatively, Monaco argues that determination of the purchase date was an issue for the jury.  (Def.'s Mot. JMOL ¶ 14.)  This Court ruled that the date of purchase was July 7, 2005 and invalidated the limitations clause contained within Monaco's Limited Warranty because the warranty was not presented to Plaintiffs until after the purchase date.

Construction of a contract – the process of determining the legal operation of an agreement – is a matter not for the jury, but for the court.  Cooper Lab., Inc. v. Int'l Surplus Lines

11

Ins. Co., 802 F.2d 667, 671 (3d Cir. 1986).  This Court considers the "purchase date" to be the

date when the seller was legally bound to sell the motorhome and the buyers were legally bound

to purchase the motorhome – in other words, the date when the contract between Stoltzfus and

the Hrycays was formed.

   "[T]he formation of a contract requires a bargain in which there is a manifestation

of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts, §

17(1) (1981).  "The manifestation of mutual assent to an exchange ordinarily takes the form of an

offer or proposal by one party followed by an acceptance by the other party or parties."

Restatement (Second) of Contracts, § 22(1) (1981).  District court rulings on Pennsylvania law

must yield to rulings of Pennsylvania's Supreme Court; if no such rulings exist, this Court must

"consider decisions of the state s [sic] intermediate appellate courts in predicting how the states

[sic] highest court would rule."  Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 400 (3d

Cir. 2004).

   The PUCC does not define "offer."  However, the Pennsylvania Superior Court

has defined an offer as "a manifestation of a willingness to enter into a bargain, so made as to

justify another person in understanding that his assent to that bargain is invited and will conclude

it." O'Brien v. Nationwide Mut. Ins. Co., 689 A.2d 254, 258 (Pa. Super. Ct. 1997); Restatement

(Second) of Contracts, § 24 (1981).  Moreover, an offer must be intentional and sufficiently

definite in its terms.  See Stumpp v. Stroudsburg Mun. Auth., 658 A.2d 333, 335 (Pa. 1995);

Columbian Rope Co. v. Rinek Cordage Co., 461 A.2d 312, 316 (Pa. Super. Ct. 1983) (finding no

offer exists where essential terms of contract are unclear).  As stated by the Superior Court in

Beaver Valley Alloy Foundry Co. v. Therma-Fab, Inc., "[i]n determining whether an offer is

made[,] relevant factors include the terms of any previous inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom a communication is addressed." 814 A.2d 217, 223 (Pa. Super. Ct. 2002) (quoting Restatement (Second) of Contracts, § 26, Comment c. (1981)).  In arriving at this determination, courts must focus on the manifestations of the document. See Espenshade v. Espenshade, 729 A.2d 1239, 1243 (Pa. Super. Ct. 1999) (stating "[i]n ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter") (quoting Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

As the Superior Court has pointed out, "[s]ome cases have construed [price] quotations to be offers while others have determined that a quotation is merely an invitation to offer.  The inquiry concerns the nature of the document in the context of the surrounding circumstances."  Beaver Valley Alloy, 814 A.2d at 222 (citations omitted).  In Beaver Valley Alloy, the court found that the written price quotation formed an offer because "the quotation contained detailed contract terms."  Id. at 223.  The price quotation in that case "described the items that were the subject of the contract, listed the quantity of those items, addressed the terms of delivery, and the reverse side enumerated [the seller's] terms . . . .  Moreover, the quotation was unequivocal and not conditioned upon further approval by [the seller] or a third party."  Id.

The original purchase agreement in this case is dated July 7, 2005 and is signed by the Hrycays and by Stoltzfus, an authorized sales dealership of Monaco.  As previously set forth, the July 7 and July 8 documents contain many specifics regarding the transaction between the

Hrycays and Stoltzfus.  While a signature is not always needed for the formation of a contract,[2] the signatures of Stoltzfus and the Hrycays on the July 7 and July 8 documents clearly show that both parties intended to enter into a contract on those dates for the sale of the motorhome. Moreover, the bottom of the front page of the July 7 and July 8 documents states "Buyer is purchasing the above described unit . . . ." and the language at the very bottom of the front page reads "A PLAIN LANGUAGE PURCHASE AGREEMENT."  Further, the terms and conditions on the reverse side of the July 7 and July 8 documents state:  "If Buyer does not complete this purchase as a cash transaction, Buyer knows before or at the time of delivery of the unit purchased, Buyer will enter into a retail installment contract and sign a security agreement . . . ." Thus, the sales document itself anticipates that the delivery of the motorhome and the signing of the finance papers will occur after the date of the purchase.  Therefore, in addition to the specificity of the terms accompanying the price quotation, the very language of the documents is sufficient to lead any buyer to reasonably believe that his or her assent is all that is needed to create a contract.[3]  As such, because Plaintiffs did not receive a copy of Monaco's Limited Warranty until July 15, 2005 – approximately one week after the contract to purchase the motorhome was formed – the reduction of the statute of limitations contained in the Limited Warranty is ineffective.

---

[2] "As a general rule, signatures are not required unless such signing is expressly required by law or by intent of the parties."  Pro Spice, Inc. v. Omni Trade Group, Inc., No. 01-1661, 2003 U.S. Dist. LEXIS 20305, *11 (E.D. Pa. Oct. 31, 2003) (citing  Shovel Transfer & Storage v. Pa. Liquor Control Bd., 559 Pa. 56 (Pa. 1999)).

[3] Even Monaco, in its Brief in Support of Renewed Motion for Judgment as a Matter of Law, acknowledges the legal effect of the July 7 and July 8 agreements, stating:  "Were [Plaintiffs] obligated to purchase the motorhome once they entered into the buyer's order(s) with Stoltzfus on July 7 and/or July 8, 2005?  Probably, from a legal standpoint.  Could Stoltzfus have sued the Hrycays for specific performance or for breach of contract if the Hrycays did not consummate the purchase of the motorhome? Probably." (Def.'s Br. Supp. Mot. JMOL 7.)

14

Under § 2725(a) of the PUCC, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.  By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it."  13 Pa.C.S. § 2725.  A cause of action for a breach of the implied warranty of merchantability "accrues on . . . the date the seller tenders delivery of the goods, even if the breach is not apparent until after delivery has been tendered."  Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div., 533 Pa. 423, 427 (Pa. 1993).

Monaco argues that, even if the purchase date was July 7, 2005, there was no privity of contract between Monaco and Plaintiffs.  Defendant relies exclusively on Pidcock v. Ewing, 371 F. Supp. 2d 870 (E.D. Mich. 2005), to support its argument that its reduction of the statute of limitations period contained in its Limited Warranty should be given effect.  The court in Pidcock held that privity was required by a consumer purchaser to succeed on an implied warranty claim.  Pidcock, 371 F. Supp. 2d at 878.  Not only has Pidcock been criticized in its own district for requiring privity, see, e.g., Zanger v. Gulf Stream Coach, Inc., No. 05-72300, 2005 U.S. Dist. LEXIS 27504, *11-15 (E.D. Mich. Oct. 25, 2005), but it is also inapplicable to a case governed by Pennsylvania law.  Pennsylvania has abolished a privity requirement in breach of warranty claims asserted against manufacturers by down-the-line purchasers.  See Spagnol Enter., Inc. v. Digital Equip. Corp., 568 A.2d 948, 951 (Pa. Super. Ct. 1989) (holding that privity is not a requirement for a breach of warranty claim); see also AM/PM Franchise Assoc. v. Atl. Richfield Co., 584 A.2d 915 (Pa. 1990); Williams v. W. Penn Power Co., 467 A.2d 811 (Pa. 1983); Kassab v. Cent. Soya, 246 A.2d 848 (Pa. 1968), overruled on other grounds.

In King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988), the Third Circuit predicted

that, if Pennsylvania courts abolished the privity requirement for warranty cases, Pennsylvania

law would likewise find limits of liability against a remote purchaser to be ineffective unless the

disclaimer was "clearly communicated to the remote party prior to his or her purchase." <u>King</u>,

855 F.2d at 1053.  Indeed, as predicted in <u>King</u>, the Pennsylvania Superior Court has in fact

established that limitations contained in a warranty agreement that are neither part of the sales

contract nor referred to by the seller at the time of sale cannot be enforceable against the

customer because the customer "obviously has not agreed to accept them."  <u>See</u> <u>Moscatiello v.</u>

<u>Pittsburgh Equip. Co.</u>, 595 A.2d 1198, 1202 (Pa. Super. Ct. 1991); <u>see also</u> <u>Infocomp, Inc. v.</u>

<u>Electra Prod., Inc.</u>, 109 F.3d 902, 908 (3d Cir. 1997) (finding that "[r]emote purchasers must be

specifically notified of a manufacturer's intent to limit damages if that limitation is to be

effective"); <u>Amato v. Mapei Corp.</u>, No. 03-2130, 2005 U.S. Dist. LEXIS 32290, *16-17 (M.D.

Pa. Dec. 12, 2005) (stating that "a warranty exclusion will not bind a remote buyer unless the

term is communicated to him").  Therefore, because the agreement to purchase the motorhome

became effective before Plaintiffs obtained a copy of Monaco's Limited Warranty, this Court

finds the reduction of the statute of limitations contained in the Limited Warranty to be

unenforceable against the Hrycays.

       2.    <u>Sufficiency of Evidence Concerning Damages</u>

Defendant's next argument is that the entire testimony of Mr. Degen should have

been stricken because his measure of damages was a "current valuation" which did not conform

to methodology set forth in 13 Pa.C.S. § 2714 (2008).  Monaco further argues that "the purchase

price is insufficient to establish the value the motorhome 'should have had.'"  (Def.'s Br. Supp.

Mot. JMOL 9.)

Plaintiffs must prove their damages by a preponderance of the evidence.  See Wright v. Buckeye Coal Co., 434 A.2d 728, 732 (Pa. Super. Ct. 1981).  Damages that are not proved are not recoverable.  Id.; see also Maxwell v. Schaefer, 112 A.2d 69, 73 (Pa. 1955).  The jury cannot award damages based on mere speculation; rather, the jury must "be presented sufficient data from which the damages can be assessed with reasonable certainty."  Natalie Bros. Towing Serv., Inc. v. Murray Ford, Inc., 41 Pa. D. & C.3d 224, 228 (Pa. C.P. 1984).  "An item of damage claimed by a plaintiff can properly be submitted to the jury only where the burden of establishing damages by proper testimony has been met."  Cohen v. Albert Einstein Med. Ctr., N. Div., 592 A.2d 720, 729 (Pa. Super. Ct. 1991).

Section 2714(b) of the PUCC states that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  13 Pa.C.S. § 2714(b).  "Though it is not intended as an exclusive measure, the 'difference in value' is the usual, standard and reasonable method of ascertaining damages in the case of a breach of warranty under the Code, applied in cases involving a variety of goods, such as . . . a mobile home . . . ."  67A Am. Jur. 2d Sales § 1143 (2008).  The purchase price serves as prima facie evidence of the value as warranted, but standing alone, provides insufficient data to establish value.  Samuel-Bassett, 357 F.3d at 402; see also K & C, Inc. v. Westinghouse Elec. Corp., 263 A.2d 390, 394 (Pa. 1970) (finding that the "purchase price is not the relevant factor; the value the goods would have had if they had been as warranted is crucial").  Alternatively, instead of subtracting the value as delivered from the value as warranted, Pennsylvania courts often recognize the cost of repair or

17

replacement as being an objective measurement of the "difference in value."  See, eg.,  Cober v. Corle, 610 A.2d 1036, 1041 (Pa. Super. Ct. 1992); Pompa v. Hart, 15 Pa. D. & C.4th 119, 124 (Pa. C.P. 1992).

The case of Price v. Chevrolet Motor Div. of Gen. Motors Corp., 765 A.2d 800 (Pa. Super. Ct. 2000), is instructive.  In Price, the Pennsylvania Superior Court found that the plaintiff "provided absolutely no evidence as to the vehicle's present value, or to its actual value when it was delivered to her in the alleged defective condition . . . [r]ather, the sole evidence [plaintiff] introduced as to damages was [plaintiff's] sales agreement." Price, 765 A.2d at 812. Accordingly, the court found that "[t]he sheer lack of evidence provided by [plaintiff] as to the vehicle's current worth or its fair market value when purchased, required the jury to speculate as to [plaintiff's] actual loss."  Id.

Here, the only evidence put forth by Plaintiffs as to the value of the motorhome as warranted is the motorhome's sticker price of $311,662.  The Hrycays received an inflated trade-in allowance when they purchased the motorhome.  The Hrycays' 1999 Damon Intruder – which had more than 72,000 miles on it and had been purchased for $36,000 in 2002 – was assigned a trade-in allowance of $81,870.  The motorhome's sticker price does not reflect this inflated trade-in allowance.  The sticker price is therefore significantly higher than the actual purchase price.  In relying only on the sticker price of the motorhome, Plaintiffs not only failed to establish the actual purchase price of the motorhome, but also made no attempt to establish the fair market value of the motorhome, ie., its value as warranted.  Moreover, Mr. Degen did not state that he based his opinion of damages as of the date of delivery; rather, Mr. Degen stated he was measuring the motorhome's value "as of the day of purchase."  Therefore, in applying the

18

measure of damages set forth by Plaintiffs, the jury was forced to speculate as to Plaintiffs' actual loss.  The only remaining testimony on damages was that of Defendant's expert who stated that the cost of repair is $14,550.  Because there was some evidence to support a "cost of repair" theory of damages, the jury could have reasonably found that Monaco breached its implied warranty.  As a result, this Court denies Monaco's Renewed Motion for Judgment as a Matter of Law.

**B.**     **Monaco's Motion for a New Trial**

1.     Denial of Motion in Limine

Monaco argues that its Limited Warranty is a "repair or replace" warranty which makes no representations regarding the quality of the vehicle or that the vehicle will be problem-free or defect-free.  Because its Limited Warranty simply states that Monaco will repair or replace defects which occur during the warranty coverage period, Monaco argues that it could only breach its warranty by failing or refusing to repair or replace.  Monaco further argues that its Limited Warranty excludes from its coverage various items covered by other manufacturer's warranties.  Therefore, Monaco contends that this Court should have limited Plaintiffs' evidence to conditions warranted by Monaco which occurred during the warranty coverage period and which required at least two repairs.  Plaintiffs respond that their breach of warranty claims are based on both express and implied warranties.  Plaintiffs argue that, when determining if the implied warranty of merchantability has been impaired, all repairs are relevant.  This Court agrees with Plaintiffs' assertion.

Pennsylvania's  implied warranty of merchantability, found at 13 Pa.C.S. § 2314,

arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards. Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992). Section 2314(a) states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." To be merchantable, goods must be of reasonable quality within expected variations and "fit for the ordinary purposes for which they are used." See Hornberger v. GMC, 929 F. Supp. 884, 888 (E.D. Pa. 1996) (quoting 13 Pa.C.S.A. § 2314(b)(3)). In the case of motorhomes or other vehicles, courts have generally found that "the implied warranty of merchantability is simply a guarantee that they will operate in a 'safe condition' and 'substantially free of defects.'" Hornberger, 929 F. Supp. at 888 (quoting Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989), cert. denied, 495 U.S. 904, 910 (1990)); see also Solarz v. DaimlerChrysler Corp., No. 2033, 2002 Phila. Ct. Com. Pl. LEXIS 34, *25 (Pa. C.P. 2002); Portillo v. Georgie Boy Mfg., No. 04-1537, 2005 U.S. Dist. LEXIS 25071 (N.D. Ill. 2005); Morris v. BMW of N. Am., LLC, No. 07-02827, 2007 U.S. Dist. LEXIS 85513 (N.D. Cal. Nov. 7, 2007). The implied warranty of merchantability is breached, if at all, "when the goods are delivered but do not meet that standard." Nationwide, 533 Pa. at 427.

The jury found that Monaco breached both its express and implied warranties. Even if a specific component was expressly warranted by an outside manufacturer, such component is covered by the implied warranty of merchantability because Monaco is a merchant with respect to goods of that kind. To the extent that any item was repaired on the first repair attempt, such repair is still relevant under Plaintiffs' implied warranty claim because the implied warranty of merchantability requires that the motorhome be substantially free of defects. Thus,

20

the entire repair history of the motorhome is relevant to Plaintiffs' implied warranty claim.  A new trial, therefore, is not warranted because Monaco's Motion in Limine was properly denied.

2.    Determination of the Purchase Date

Monaco alleges that it is entitled to a new trial for a jury determination as to the purchase date of the motorhome.  As already discussed, the construction of a contract is a matter for the court, not the jury.  Cooper Lab., 802 F.2d at 671.  The purchase date is the date when the contract between Stoltzfus and the Hrycays was formed.  The determination of that date involves contract construction and, thus, is a matter for the court.  See id.  Therefore, Monaco is not entitled to a new trial for a jury determination of the date of purchase.

3.    Reference to "Lemon"

Defendant also asserts that Mrs. Hrycay's statement that the motorhome was a "lemon" prejudiced Monaco so severely as to warrant a mistrial.  In support of its argument, Defendant has only provided cases discussing improper remarks by counsel.  See Daniel v. William R. Drach Co., 849 A.2d 1265 (Pa. Super. Ct. 2004); Stevenson v. Pa. Sports & Enter., Inc., 372 Pa. 157 (Pa. 1952); Olsavsky v. Bamford, 363 Pa. 47 (Pa. 1949).  Further, while the term "lemon" carries a negative connotation, the word has a non-legal meaning in everyday language usage.  See THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2004) (stating that "lemon" is informally used to mean "[o]ne that is unsatisfactory or defective").  Moreover, in light of the approximately twenty-five repair invoices, this Court finds that the jury's verdict would not have been different had Mrs. Hrycay not used the word "lemon." Therefore, Defendant suffered no prejudice from the remark, and the request for a mistrial was

21

properly denied.

**C.**     **Monaco's Motion for Amended Judgment**

As previously discussed, the record reveals that Plaintiffs' expert failed to prove the value of the motorhome as warranted and as accepted, as required by 13 Pa.C.S. § 2714(b) and Price.  Consequently, there is no evidentiary support for the jury's verdict under the Plaintiffs' method of calculating damages.  The only other possible method the jury could have based Plaintiffs' damages upon was the cost of repairs.  The evidence cannot support the $105,000 jury verdict when the estimated cost of repairs was $14,550.  As a result, the jury verdict was clearly excessive and is not supported by the evidence.

Under Fed. R. Civ. P. 59(a), this Court may order a new trial on all or part of the issues.  Additionally, a damage award that is clearly unsupported and/or excessive in light of the evidence may be altered by this Court if Plaintiffs are willing to accept the alteration.  Parkway Garage, 1994 WL at *6.  Because the Hrycays failed to provide sufficient evidence to sustain the jury verdict of $105,000, this Court will grant Monaco's motion for Amended Judgment.  The Hrycays may, within fourteen days, remit all amounts awarded above $14,550, a figure which conforms with the weight of the evidence, and represents damages based on the cost of repairs. If the Hrycays reject a remittitur-reduced verdict in the amount stated, this Court shall order a new trial on the issue of damages.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                          :
MICHAEL AND TAMERA HRYCAY,                :
                                          :        CIVIL ACTION
                    Plaintiffs,           :
                                          :
        v.                                :        No. 07-2605
                                          :
MONACO COACH CORP.,                       :
                                          :
                    Defendant.            :
_____:

## ORDER

        **AND NOW**, this 10th day of October, 2008, in consideration of the Renewed Motion for

Judgment as a Matter of Law (Doc. No. 40) and the Alternative Motions for New Trial (Doc. No.

41) and Amended Judgment (Doc. No. 42) filed by the Defendant, Monaco Coach Corporation,

and the responses thereto, it is hereby **ORDERED** that the Motion for Amended Judgment is

**GRANTED** and all other motions are **DENIED**.  This Court shall order a new trial on the issue

of damages unless, within fourteen (14) days from the date of this Order, Plaintiffs shall have

filed a remittitur of so much of the verdict as exceeds Fourteen Thousand, Five Hundred and

Fifty Dollars ($14,550).


                                        BY THE COURT:



                                        /s/ Robert F. Kelly_____
                                        ROBERT F. KELLY
                                        SENIOR JUDGE